**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

—————————————————————
MARLA ADLER, STEPHEN BAUSENWEIN,  :
AL DEICHLER, MIKE FROST, ED HALPIAN,  :
RICH HERBST, KEVIN KELLY, ARTHUR  :
LANDSMAN, ERIK MALAGON, JOE O'BRIEN,  :
JOHN RE and DAN WATTS, on behalf of  :
themselves and all others similarly-situated,  :
                   Plaintiffs,  :   Case No. CV-09-439(LDW)(ARL)
                                :
           v.  :
                                  :
20/20 COMPANIES; 20/20 COMMUNICATIONS,  :
INC.; VERIZON COMMUNICATIONS, INC.;  :
VERIZON SERVICES CORP.; BARRY MILLAY,  :
in his individual and official capacities; WILLIAM  :
ROWLAND, JR., in his individual and official  :
capacities; and JASON GREEN, in his individual  :
and official capacities,  :
                   Defendants.  :
—————————————————————:

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PARTIAL CLASS SETTLEMENT

        Saul D. Zabell
        Zabell & Associates, P.C.
        4875 Sunrise Highway
        Suite 300
        Bohemia, NY  11716
        Tel:  (631) 589-7242
        Fax:  (631) 563-7475

        Scott B. Gilly
        Thompson Wigdor & Gilly LLP
        85 Fifth Avenue
        New York, NY  10003
        Tel:  (212) 257-6800
        Fax:  (212) 257-6845

        *Counsel for Plaintiffs and the Class*

## INTRODUCTION

Subject to the final approval of this Court, Plaintiffs Marla Adler, Stephen Bausenwein, Al Deichler, Mike Frost, Ed Halpian, Rich Herbst, Kevin Kelly, Arthur Landsman, Erik Malagon, Joe O'Brien, John Re and Dan Watts (collectively, "Plaintiffs" or "class representatives") have settled their claims against Defendants 20/20 Companies, Barry Millay, William Rowland, Jr. and Jason Green (collectively, the "Individual Defendants") (with 20/20 Companies, the "20/20 Companies Defendants") on behalf of the proposed class for $1,296,000. For the reasons discussed below, the proposed settlement satisfies all of the criteria for final approval under federal law. Accordingly, Plaintiffs respectfully request that the Court (1) certify the settlement class under Fed. R. Civ. P. 23(b)(3); (2) grant final approval of the Joint Stipulation of Settlement and Release (the "Agreement" or "Agmt."), attached as Exhibit 1 to the Affidavit of Saul D. Zabell in Support of Plaintiffs' Unopposed Motion for Final Approval of Partial Class Settlement ("S. Zabell Aff."); and (3) approve service awards for Plaintiffs in the amount of $10,000 each.

## BACKGROUND

Until March 18, 2008, Plaintiffs were employed by or under contract with 20/20 Companies to sell Verizon FiOS Internet and television services to residential customers in and around Melville, New York. On February 5, 2009, Plaintiffs filed a class action Complaint against 20/20 Companies, Verizon Communications, Inc. and Verizon Services Corp. (together, "Verizon"). On June 26, 2009, Plaintiffs amended their Complaint to add 20/20 Communications, Inc. and the Individual Defendants.

Plaintiffs purport to represent a class of all similarly-situated sales representatives and account executives who sold Verizon products nationwide or, alternatively, in the State of New

York.  (Am. Compl. §§ 1, 25-26.)  They assert four claims:  (1) failure to pay earned commissions in violation of the New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 et seq.; (2) unlawful deductions in violation of the NYLL; (3) conversion; and (4) unjust enrichment.

On July 13, 2009, the 20/20 Companies Defendants requested a pre-motion conference with respect to their anticipated motion to dismiss the Amended Complaint.  During the pendency of that request, Plaintiffs and the 20/20 Companies Defendants negotiated the partial class settlement that is the subject of this motion.

## SUMMARY OF THE SETTLEMENT TERMS AND ADMINISTRATION

After substantial and arm's length negotiations, Plaintiffs have agreed to settle their claims against the 20/20 Companies Defendants.  They now request this Court's final approval of the negotiated settlement on behalf of the proposed settlement class.  The following is a summary of the Agreement's key terms and conditions.

**I.      Eligible Employees**

Putative class members eligible to receive an award pursuant to the Agreement are all persons who were employed by or under contract with 20/20 Companies, its predecessors or affiliates, direct or indirect, to sell Verizon FiOS Internet and television services to residential customers in the State of New York (the "Covered Positions") at any time from January 1, 2006, through and including March 18, 2008, (the "Class Period") who do not opt-out of the settlement.  (See Agmt. ¶¶ 5, 8, 10, 17.)

**II.     The Settlement Fund**

The Agreement creates a fund of $1,296,000 ("the Fund").  The Fund will be used to pay class counsel's attorneys' fees and costs, service payments to the Plaintiffs in the amount of $10,000 each, and all costs associated with the administration of the Fund.  (See id. at ¶¶ 20, 33,

3

36, 43, 49, 51, 52.)  The remainder will be distributed to participating class members who execute a claim form and do not opt-out of the settlement pursuant to an allocation formula based upon the number of weeks worked in a Covered Position during the Class Period.  (Id. at ¶¶ 7, 22.)  These payments will be treated as earned wages and will be reduced by all applicable federal, state and local taxes.  (Id. at ¶ 33.)

The only portion of the Fund that may revert back to the 20/20 Companies Defendants is the unused portion of a $25,000 set-aside for the correction of errors and unanticipated administrative costs, as well as the amount of any settlement checks that are not cashed by participating class members.  (Id. at ¶ 47.)

## III.   Attorneys' Fees and Costs

Class counsel have applied in a motion filed concurrently herewith for monies to be paid out of the Fund to compensate them for their attorneys' fees and costs incurred as counsel to Plaintiffs and the proposed settlement class.

## IV.   Claims Administrator

The Parties retained the services of Gilardi & Co., LLC, of San Rafael, California, as Settlement Claims Administrator ("Claims Administrator" or "Gilardi").  Gilardi is the nation's largest, private full-service administrator of class action settlements, and has significant experience administering class action settlements, with more than 3000 cases administered and $12 billion in assets distributed.  (Declaration of Bernella Lenhart ("Lenhart Decl.") ¶ 2.)  All of Gilardi's fees will be paid from the Fund.  (Agmt. ¶¶ 7, 51.)

## V.   Releases

The Agreement provides that every class member who does not opt-out of the settlement will release the following categories of claims:  (1) any and all claims against the 20/20

Companies Defendants under New York state wage and hour laws that arose or accrued at any time up to the date Judgment is entered; and (2) any and all claims against Verizon under New York state wage and hour laws that arose or accrued at any time up to and including March 18, 2008. (Id. at ¶¶ 19, 70.) Additionally, in consideration for the service awards, Plaintiffs will release every claim of any kind they may have against the 20/20 Companies Defendants or Verizon, whether known or unknown, that arose or accrued during those same time periods. (Id. at ¶¶ 19, 71.) Importantly, neither Plaintiffs' nor any class member's claims against Defendant 20/20 Communications, Inc., or Verizon after March 18, 2008, is affected by the Agreement. (Id. at ¶¶ 1, 19, 23.) All of those claims will continue to be litigated in this Court.

## VI.    **The Approval and Payment Process**

Pursuant to the Agreement, the Claims Administrator received from 20/20 Companies Defendants a list of the names and addresses of potential class members. (Lenhart Decl. ¶ 4.) The Claims Administrator mailed the class notice, the consent to participate and claim certification form, and the opt-out form to putative class members within 45 days of the Court's preliminary approval order. (Lenhart Decl. 6.) Class members were given 60 days to submit an opt-out form to the Claims Administrator. (S. Zabell Aff. ¶ 10.) A final fairness hearing will be held on February 10, 2011. If the Court finds the Agreement to be fair and reasonable, the Court will issue an order granting final approval of the Agreement and enter judgment. The Agreement will become effective on the date upon which the time for filing or noticing an appeal expires, the judgment is finally affirmed on appeal or any appeal is finally dismissed, whichever is later (the "Settlement Effective Date"). (Agmt ¶ 21.)

Defendants shall deposit the settlement amount with the Claims Administrator no later than the Settlement Effective Date. (Id. at ¶ 20.) The Claims Administrator will disburse each

participating class member's share of the Fund and the Service Payments within 20 days of the Settlement Effective Date.  (Id. at ¶ 49.)  Payment of class counsel's attorneys' fees and costs will be made within 30 days of the Settlement Effective Date.  (Id. at ¶ 52.)

## ARGUMENT

### I.   The Settlement Class Meets the Legal Standard for Class Certification

When faced with a proposed class settlement, courts first examine whether the settlement class is certifiable.  Denney v. Deutsche Bank AG, 443 F.3d 252, 270 (2d Cir. 2006).  On October 26, 2010, the Court provisionally certified the settlement class.  The Court should now grant final certification because all of the certification requirements have been met and there is no opposition to certification for settlement purposes.  For the purpose of effectuating the settlement, the Parties seek certification of a class of all persons who were employed by or under contract with 20/20 Companies, its predecessors or affiliates, direct or indirect, to sell Verizon FiOS Internet and television services to residential customers in the State of New York at any time from January 1, 2006, through and including March 18, 2008.

The proposed Class satisfies the requirements under Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b).  Rule 23(a) requires numerosity, commonality, typicality, and adequacy of representation.  Fed. R. Civ. P. 23(a).  Rule 23(b)(3) requires the Court to find that questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Id. at (b)(3).  In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification.  Reade-Alvarez

6

v. Eltman, Eltman & Cooper, P.C., 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (internal citation omitted).

  A. Numerosity

  Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  "[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  Here, Plaintiffs easily satisfy the numerosity requirement because there are more than 1000 potential class members.  (See Lenhart Decl. ¶ 6.)

  B. Commonality

  The proposed class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 157 n.13 (1982).  Although the claims need not be identical, they must share common questions of fact or law.  Frank v. Eastman Kodak Co., 228 F.R.D. 174, 181 (W.D.N.Y. 2005).  There must be a "unifying thread" among the claims to warrant class certification.  Kamean v. Local 363, Int'l Brotherhood of Teamsters, 109 F.R.D. 391, 394 (S.D.N.Y. 1986).  Courts construe the commonality requirement liberally.  Frank, 228 F.R.D. at 181.

  This case involves numerous common issues because Plaintiffs' claims and the putative class members' claims arise from 20/20 Companies Defendants' common illegal compensation practices.  Plaintiffs and Class Members bring the identical claims that allege violations of the NYLL and related torts that each raises the same factual and legal questions about the 20/20 Companies Defendants' policies, procedures and practices with respect to purchase orders,

commissions and wage deductions.  In the absence of class certification and settlement, each individual class member would be forced to litigate these common issues individually.

     C.  Typicality

     Typicality is also satisfied.  "Like the commonality requirement, typicality does not require the representative party's claim to be identical to those of all class members."  Frank, 228 F.R.D. at 182.  Typicality is satisfied "when each class members' claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  Marisol A. v. Giuliani, 226 F.3d 372, 376 (2d Cir. 1997) (internal quotation marks omitted).  "Minor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendant directs "the same unlawful conduct" at the named plaintiffs and the class.  Robidoux v. Celani, 987 F.2d 931, 936-37 (2d Cir. 1993).

     Plaintiffs' claims arise from the same factual and legal circumstances that form the bases of the putative class members' claims.  See Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008) (finding typicality satisfied where plaintiff's claims were based on the same course of events and legal theory as class members' claims).  Plaintiffs had the same basic job duties as the putative class members and suffered the same statutory violations and tortious conduct at the hands of 20/20 Companies Defendants.  See, e.g., Lenahan v. Sears, Roebuck & Co., No. 02 Civ. 45, 2006 U.S. Dist. LEXIS 60307, at *25-26 (D.N.J. July 10, 2006) (since the same allegedly unlawful conduct affected both plaintiffs and the putative class members – namely, defendant's alleged violation of applicable state and federal wage and hour laws – the typicality requirement of Rule 23(a)(3) satisfied).

     D.  Adequacy of Plaintiffs

     Plaintiffs also meet the adequacy requirement.  Rule 23(a)(4) requires that "the

representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement exists to ensure that the class representatives will have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members." Toure v. Cent. Parking Sys., No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (internal quotation marks omitted). "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Dziennik v. Sealift, Inc., No. 05 Civ. 4659, 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007) (quoting Martens v. Smith Barney, Inc., 181 F.R.D. 243, 259 (S.D.N.Y. 1998)). There is no evidence that Plaintiffs have interests that are antagonistic or at odds with those of the putative class members.

> ### E.   Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 623 (1997). Satisfaction of Rule 23(a) "goes a long way toward satisfying Rule 23(b)(3) requirement of commonality." Rossini v. Ogilvy & Mather, Inc., 798 F.2d 590, 598 (2d Cir. 1986).

> #### *1.   Common questions predominate.*

Predominance requires that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." In re Visa Check/MasterMoney Antitrust Litig., 280 F.2d 124, 136 (2d Cir. 2001). The essential inquiry is whether "liability can be determined on a class

wide basis, even when there are some individualized damage issues." Id. at 139.  Where
plaintiffs are "unified by a common legal theory" and by common facts, the predominance
requirement is satisfied.  McBean v. City of New York, 228 F.R.D. 487, 502 (S.D.N.Y. 2005).

Here, the proposed settlement class is unified by common factual allegations – namely,
that the 20/20 Companies Defendants failed to pay the class members all earned commissions on
valid purchase orders and took improper and unauthorized deductions from their paychecks for
business expenses and administrative costs.  The putative class is also unified by a common legal
theory – that these actions violated the NYLL, constituted an unlawful conversion of property
and unjustly enriched the 20/20 Companies Defendants at the putative class' expense.  See, e.g.,
Khait v. Whirlpool Corp, No. 06-6381, 2010 WL 2025106, at *7 (E.D.N.Y. Jan. 20, 2010)
(finding that common issues predominated over individual issues with respect to class members'
NYLL claims) (collecting cases).  The calculation of damages will certainly require
individualized inquiries, but such inquiries do not defeat the Rule 23(b)(3) predominance
requirement.  See In re Visa Check, 280 F.3d at 139 ("Common issues may predominate when
liability can be determined on a class-wide basis, even when there are some individualized
damages issues.").

### 2.   *A class action is a superior mechanism.*

Superiority analyzes whether "the class action device [is] superior to other methods
available for a fair and efficient adjudication of the controversy."  Green v. Wolf Corp., 406 F.2d
291, 301 (2d Cir. 1968).  Rule 23(b)(3) sets forth a non-exclusive list of relevant factors,
including whether individual class members wish to bring, or have already brought, individual
actions; and the desirability of concentrating the litigation of the claims in the particular forum.
Fed. R. Civ. P. 23(b)(3).

In this case, Plaintiffs have little means to prosecute individual actions, and many of the prospective class members are likely to be similarly situated. Further, Plaintiffs are unaware of any individual lawsuits that have been filed by class members arising from the same alleged misconduct. (S. Zabell Aff. ¶ 8.) Regarding the forum, concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within the Court's jurisdiction. Finally, the class device will not only achieve economies of scale for putative class members, but will also conserve the resources of the judicial system and preserve public confidence in the integrity of the system by avoiding the waste and delay of repetitive proceedings and preventing inconsistent adjudications of similar issues and claims. In short, Plaintiffs contend that a class action is the most suitable mechanism to fairly, adequately, and efficiently resolve the putative class members' claims against the 20/20 Companies Defendants.

## II.  **The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved in all Respects**

Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005). To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in City of Detroit v. Grinnell Corp., 495 F.2d 448 (2d Cir. 1974). Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. Wal-Mart Stores, 396 F.3d at 116 (internal citation omitted); see also Spann v. AOL Time Warner, Inc., No. 02 Civ. 8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). When "a settlement is negotiated prior to class certification . . . it is

subject to a higher degree of scrutiny in assessing its fairness." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). Here, even under heightened scrutiny, procedural and substantive considerations support approving the proposed settlement.

     A.  The Proposed Settlement is Procedurally Fair

A "presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, 396 F.3d at 116. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." In re EVCI Career Colls. Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

The proposed settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had conducted a thorough investigation and evaluated the merits of the claims.

     B.  The Proposed Settlement is Substantively Fair

The Second Circuit in Grinnell Corp., 495 F.2d at 448, provided the analytical framework for evaluating the substantive fairness of a class action settlement. The "Grinnell factors" should guide district courts in this determination. They are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery contemplated; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the Defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness

of the settlement fund in light of all the attendant risks of litigation.  Id. at 463.  All of the

Grinnell factors weigh in favor of final approval of the settlement Agreement.

> 1. *Litigation through trial would be complex, costly, and long (Grinnell*
> *Factor 1).*

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs

seek to avoid significant expense and delay and ensure a speedy, risk-free recovery for the class.

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude

of other problems associated with them."  In re Austrian & German Bank Holocaust Litig., 80 F.

Supp. 2d 164, 174 (S.D.N.Y. 2000).  This case is no exception, as it encompasses 12 Plaintiffs,

seven Defendants, more than 1000 putative class members, and a variety of statutory and

common law claims.  Moreover, further litigation without settlement would necessarily result in

additional expense and delay.  Additional discovery will be required to establish liability and

damages.  A complicated trial will be necessary and will consume tremendous amounts of time

and resources for both sides, as well as require substantial judicial resources.  Any judgment will

likely be appealed.  This settlement, on the other hand, makes monetary relief available to class

members in a prompt and efficient manner.  Therefore, the first Grinnell factor weighs in favor

of final approval.

> 2. *The reaction of the class has been positive (Grinnell Factor 2).*

"It is well-settled that the reaction of the class to the settlement is perhaps the most

significant factor to be weighed in considering its adequacy."  Maley v. Dale Global Techs.

Corp., 186 F. Supp. 2d 358, 362-63 (S.D.N.Y. 2002).  The lack of class member objections "may

itself be taken as evidencing the fairness of a settlement."  RMED Int'l, Inc. v. Sloan's

Supermarkets, Inc., No. 94 Civ. 5587, 2003 U.S. Dist. LEXIS 8239, at *4 (S.D.N.Y. May 15,

2003).  Here, the class notice included estimates of how much each putative class member would

receive based on their dates of employment.  The class notice also informed putative class members that they could object to or exclude themselves from the settlement and explained how to do so.  To date, no putative class member has objected to the settlement, and only nine class members have opted out.[1]  (Lenhart Decl ¶¶ 11, 12.)  Moreover, to date, Gilardi has received 301 timely consent to participate forms.  (Id. at ¶ 10.)  This favorable response demonstrates that the putative class approves of the results, which supports final approval.  See Damassia v. Duane Reade, Inc., No. 04 Civ. 8819, No. 04 Civ. 2295, 2009 WL 5841128, at *2 (July 27, 2009) (finding settlement to be fair, reasonable, and adequate where no class members objected and only one class member opted out); Wright v. Stern, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).  Therefore, the second Grinnell factor weighs in favor of final approval.

> 3. *Discovery has advanced far enough to allow the parties to resolve the case responsibly (Grinnell Factor 3).*

Although preparing this case through trial would require significantly more hours of discovery work for both sides, the Parties have completed enough discovery to responsibly recommend settlement.  The operative question is "whether counsel had an adequate appreciation of the merits of the case before negotiating."  In re Warfarin Sodium Antitrust Litigation, 391 F.3d 516, 537 (3d Cir. 2004).  "The pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [but] an aggressive effort to ferret out facts helpful to the prosecution of the suit."  In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 176 (quotation marks omitted).  Although litigating Plaintiffs' claims against the 20/20 Companies Defendants through summary judgment and, if necessary,

---

[1] Of the nine class members who filed requests to opt-out, two concurrently filed consent to participate forms. Gilardi is attempting to determine which form these putative class members wish to withdraw.  (Lenhart Decl. ¶ 11.)

14

trial, would likely require hundreds if not thousands of hours of additional discovery for all

Parties, Plaintiffs and the 20/20 Companies Defendants have engaged in enough informal

discovery with respect to the legal and factual merits of the claims – including the exchange of

compensation records – to evaluate the strengths and weaknesses of the case and responsibly

recommend settlement. See Frank, 228 F.R.D. at 185 (approving settlement of case "in the

relatively early stages of discovery" where parties had exchanged extensive information

pertaining to the identities of class members and to defendant's time and pay practices and where

counsels' negotiations, while "cooperative," had "been in no way collusive"). Therefore, the

third Grinnell factor weighs in favor of final approval.

> 4. *Plaintiffs would face real risks if the case proceeded (Grinnell Factors 4 and 5).*

The risks of establishing liability and damages weigh further in favor of final approval.

"Litigation inherently involves risks." In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104,

126 (S.D.N.Y. 1997). Indeed, "if settlement has any purpose at all, it is to avoid a trial on the

merits because of the uncertainty of the outcome." In re Ira Haupt & Co., 304 F. Supp. 917, 934

(S.D.N.Y. 1969). In weighing the risks of establishing liability and damages, the Court "must

only weigh the likelihood of success by the plaintiff class against the relief offered by the

settlement." In re Austrian & German Bank Holocaust Litig., 80 F. Supp. 2d at 177 (internal

quotation marks omitted). Although Plaintiffs believe that their case is strong, it is arguably

defensible on many grounds. As an initial matter, the 20/20 Companies Defendants believe that

they have a strong likelihood of success on their anticipated motion to dismiss, which requests

dismissal of Plaintiffs' claims on the grounds of a forum selection clause that expressly requires

Plaintiffs to litigate their claims in Texas. Such clauses enjoy a presumption of validity under

New York law and may on the strength of that presumption be enforced by this Court. See Boss

v. Am. Express Fin. Advisors, Inc., 791 N.Y.S.2d 12, 14 (N.Y. App. Div. 2005) ("It is the well

settled 'policy of the courts of this State to enforce contractual provisions for choice of law and

selection of a forum for litigation.'") (citation omitted); Harry Casper, Inc. v. Pines Assocs., L.P.,

861 N.Y.S.2d 820, 820 (N.Y. App. Div. 2008) (noting that forum selection provisions are

considered to be "prima facie valid") (citing Brooke Group v. JCH Syndicate 488, 640 N.Y.S.2d

479, 481 (1996)).

As for the merits of Plaintiffs' claims, Plaintiffs face challenges in proving both liability

and damages, particularly in light of the fact-intensive nature of their claims under the NYLL.

To prove that the 20/20 Companies Defendants failed to pay "earned" commissions, for

example, Plaintiffs would have to show not only that the sales in question were properly made

and documented, but also that they were improperly rejected or reversed after the commissions

had already been earned.  To do so on behalf of the entire proposed class, moreover, Plaintiffs

would have to demonstrate the existence of an unlawful policy or practice to withhold earned

wages or some systemic flaw in the 20/20 Companies Defendants' administrative processes

sufficient to render the rejections or reversals during the Class Period so legally suspect as to

warrant the imposition of classwide liability.[2]  Accordingly, while Plaintiffs believe that their

claims against the 20/20 Companies Defendants are meritorious, their counsel are experienced

---

[2]  Similarly, to prove that the 20/20 Companies Defendants took unlawful deductions from their
paychecks, Plaintiffs will have to show that the allegedly unlawful deductions were made after the
wages in questions had been "earned."  See Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609,
618-19 (2008) (holding that the NYLL permits employers to make adjustments to the calculation of
commissions for business expenses); Levy v. Verizon Info. Servs., Inc., 498 F. Supp. 2d 586, 600-03
(E.D.N.Y. 2007) (same).  And to obtain judgment against the Individual Defendants in their
individual capacities, Plaintiffs would have to prove that each was Plaintiffs' employer, an outcome
that is made more difficult given Judge Emerson's rulings in the companion state court action.  See
Adler v. 20/20 Companies, No. 4884-09, slip op. at 2 (N.Y. Sup. Ct. Jan. 5, 2010) (dismissing
Plaintiffs' NYLL retaliation claim against the Individual Defendants on the basis that they were not
Plaintiffs' employers within the meaning of the statute).  Clearly, Plaintiffs face real litigation risks if
their claims against the 20/20 Companies Defendants were to proceed.

and realistic, and understand that the resolution of liability and damages issues, the outcome of a trial, and the inevitable appeals process are rife with uncertainty. The proposed settlement abates this uncertainty. Therefore, the fourth and fifth Grinnell factors weigh in favor of final approval.

> 5. *Establishing a class and maintaining it through trial would not be simple (Grinnell Factor 6).*

In any representative action, the risk of maintaining class status through trial is present. Risk, expense, and delay permeate such processes, which settlement goes some way towards eliminating. The removal of the 20/20 Companies Defendants from the certification equation would reduce the number of distinct factual and legal questions at issue in the case. This factor favors final approval. Therefore, the sixth Grinnell factor weighs in favor of final approval.

> 6. *Defendants' ability to withstand greater judgment is uncertain (Grinnell Factor 7).*

Whether the 20/20 Companies Defendants' can withstand a greater judgment is unclear at this time, but even if they can, that fact would not suggest that the settlement is unfair. See In re MetLife Demutualization Litig., 689 F. Supp. 2d 297, 339-40 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other Grinnell factors weigh heavily in favor of settlement approval.'") (citing In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 460 (S.D.N.Y. 2004)). Therefore, the seventh Grinnell factor does not weigh against final approval.

> 7. *The settlement fund is substantial in light of the possible recovery and the attendant risks of litigation (Grinnell Factors 8 and 9).*

The $1,296,000 plus interest settlement amount represents a good value given the attendant risks of litigation, although recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The determination of whether a settlement amount is

reasonable "is not susceptible of a mathematical equation yielding a particularized sum." In re PaineWebber Ltd. P'Ships Litig., 171 F.R.D. 104, 130 (S.D.N.Y. 1997). Instead, there is a "range of reasonableness" with respect to a settlement that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).

Here, class counsel recognize that Plaintiffs' claims against the 20/20 Companies Defendants present significant risks that encourage compromise even if a greater recovery could be achieved if Plaintiffs succeeded on the merits at trial and survived the inevitable appeal. Similarly, the 20/20 Companies Defendants have concluded that eliminating the uncertainties of litigation and the prospect of potentially greater liability are worth a substantial settlement. That consensus alone suggests that the amount is well within the range of reasonableness. Therefore, the eighth and ninth Grinnell factors weigh in favor of final approval.

For all of these reasons, the proposed settlement is substantively fair. Accordingly, procedural and substantive considerations support approving the proposed settlement.

### III.   Plaintiffs Merit the Requested Service Awards

In addition to the individualized awards, Plaintiffs move herein for the approval of service payments in the amount of $10,000 each in recognition of the services they rendered on behalf of the putative class. These service awards are reasonable in light of the time and effort the class representatives expended in furtherance of the class investigation and settlement. Each class representative was integral in initiating this class action and made significant contributions to the prosecution of the litigation. The class representatives met extensively with class counsel at many stages of the case, compiling and presenting documents in support of the claims, reviewing with class counsel voluminous records produced by the 20/20 Companies Defendants,

and otherwise cooperating and coordinating with class counsel to initiate the action, respond to various motions to dismiss and document their claims during the lengthy settlement negotiations. Without their efforts, this case may not have been brought and this settlement would not have been reached.  Additionally, the class representatives are releasing additional claims against the 20/20 Companies Defendants in consideration of the service awards.  (Agmt. ¶¶ 36, 71.)

Courts acknowledge that class representatives play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  See, e.g., Velez v. Majik Cleaning Serv., No. 03 Civ. 8698, 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoting Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (citation omitted)).  Accordingly, "[i]ncentive awards are not uncommon in class action cases and are within the discretion of the court."  Frank, 228 F.R.D. at 187.

In examining the reasonableness of service awards, courts consider: (1) the time and effort expended by the class representatives during the litigation; (2) any burdens sustained by the class representatives, including personal risk; and (3) the ultimate recovery.  See id.; see also Roberts, 979 F. Supp. at 200.

The class representatives merit service awards based on the significant time and effort they expended during the litigation.  Courts recognize the important factual knowledge that class representatives bring to employment class actions, including information about employer policies and practices that affect wages.  See Frank, 228 F.R.D. at 187-88 (recognizing the important role that class representatives play as the "primary source of information concerning

19

the claims," including by responding to counsel's questions and reviewing documents). In this case, the class representatives alerted class counsel to the claims and provided the valuable factual information necessary to support them and refute 20/20 Companies Defendants' allegations to the contrary. The class representatives assisted class counsel's investigation and prosecution of their claims by providing detailed factual information regarding their job duties and hours worked, contacting witnesses, setting up meetings between class counsel and potential plaintiffs, and assisted class counsel to evaluate 20/20 Companies Defendants' representations regarding their pay practices. (S. Zabell Aff. ¶ 5.)

Furthermore, the class representatives in this case bore the burdens of bringing the case, including the risk of losing the litigation, the risk of having costs assessed against them in the event of a loss, and the substantial risks of retaliation. In the employment context, where workers are often blacklisted if they are considered trouble makers, class representatives are particularly vulnerable to retaliation. See Silberblatt v. Morgan Stanley, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."). Even where there is no record of actual retaliation, class representatives merit recognition for assuming the risk of retaliation for reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.") Here, class representatives faced the risk that new employers would learn that they were class representatives in a lawsuit against their former employer and take adverse action against them. And each time they change jobs, the class representatives risk retaliation in the hiring process for bringing these claims on behalf of the class.

Finally, the service payments requested by the class representatives are also reasonable in light of the settlement of $1,296,000. See McMahon v. Olivier Cheng Catering & Events, LLC, No. 08 Civ. 8713, 2010 WL 2399328, at *8 (S.D.N.Y. Mar. 2, 2010) (awarding $5,000 service payments to two class representatives from $400,000 fund); Reyes v. Buddha Bar-NYC, No. 08 Civ. 02494, 2009 WL 5841177, at *5 (S.D.N.Y. May 28, 2009) (awarding payments of $7,500 to three named plaintiffs from $710,000 fund); Wright v. Stern, 553 F. Supp. 2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of 11 named plaintiffs in $11.8 million employment discrimination settlement).

## CONCLUSION

For the reasons set above, Plaintiffs respectfully request that the Court (1) certify the settlement class; (2) grant final approval of the settlement Agreement; and (3) approve service awards from the Settlement Fund for Plaintiffs in the amount of $10,000 each.

Dated:  New York, New York
      February 7, 2011

Respectfully submitted,

_____
Saul D. Zabell
Tim Domanick
Zabell & Associates, P.C.
4875 Sunrise Highway
Suite 300
Bohemia, NY 11716
Tel:  (631) 589-7242
Fax:  (631) 563-7475

Scott B. Gilly
Raymond Audain
Thompson Wigdor & Gilly LLP
85 Fifth Avenue
New York, NY 10003
Tel:  (212) 257-6800
Fax:  (212) 257-6845

*Counsel for Plaintiffs and the Class*