**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| MARLA ADLER, STEPHEN BAUSENWEIN, AL DEICHLER, MIKE FROST, ED HALPIN, RICH HERBST, KEVIN KELLY, ARTHUR LANDSMAN, ERIK MALAGON, JOE O'BRIEN, JOHN RE and DAN WATTS, on behalf of themselves and all others similarly-situated, | : : : : : : : | |
| Plaintiffs, | : | No. CV-09439(LDW)(ARL) |
| | : | |
| v. | : | |
| | : | |
| 20/20 COMPANIES; 20/20 COMMUNICATIONS, INC.; VERIZON COMMUNICATIONS, INC.; VERIZON SERVICES CORP.; BARRY MILLAY, in his individual and official capacities; WILLIAM ROWLAND, JR., in his individual and official capacities; and JASON GREEN, in his individual and official capacities, | : : : : : : : | |
| Defendants. | : | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS' FEES AND EXPENSES FOR CLASS SETTLEMENT

Douglas H. Wigdor
Thompson Wigdor LLP
85 Fifth Avenue
New York, NY 10003
Tel: (212) 257-6800
Fax: (212) 257-6845

Saul D. Zabell
Zabell & Associates, P.C.
One Corporate Drive
Suite 103
Bohemia, New York 11716
Tel: (631) 589-7242
Fax: (631) 563-7475

*Counsel for Plaintiffs and the Class*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES....................................................................................ii

INTRODUCTION ............................................................................................2

ARGUMENT.....................................................................................................4

    I.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE AWARD
        OF TWENTY FIVE PERCENT OF THE SETTLEMENT FUND

        A.  The Percentage Method is the Preferred Method in the Second
            Circuit for Awarding Attorneys' Fees in Common Fund
            Cases...............……………………………………………... 5

        B.  The Goldberger Factors Support an Award of 25% of the
            Fund…………………………………………………………7

              1.   Class Counsel's Time and Labor…………………………7

              2.   Magnitude and Complexity of the Litigation…………..10

              3.   Risk of Litigation………………………………….....10

              4.   Quality of Representation……………………………...12

              5.   Fee in Relation to the Settlement………………….....13

              6.   Public Policy Considerations………………………….14

CONCLUSION.................................................................................................16

**TABLE OF AUTHORITIES**

**CASES**

Boss v. Am. Express Fin. Advisors, Inc.,
 791 N.Y.S.2d 12 (N.Y. App. Div. 2005)……………………………....……12

Brooke Group v. JCH Syndicate,
 488, 640 N.Y.S.2d 479 (1996)…….………………………………....………..12

Davis v. J.P. Morgan Chase & Co.,
 827 F.Supp.2d 172 (W.D.N.Y. 2011)…..………………………….....………5, 9

Deposit Guar. Nat'l Bank v. Roper,
 445 U.S. 326 (1980)..……………………………………………....………5, 14

Detroit v. Grinnell Corp.,
 495 F.2d 448 (2d Cir. 1974)……………..……………….....………………10

Febus v. Guardian First Funding Group, LLC,
 10 CIV. 2590 (SHS), 2012 WL 2368472 (S.D.N.Y. June 22, 2012)………..…..13

Frank v. Eastman Kodak Co.,
 228 F.R.D. 174 (W.D.N.Y. 2005)..………………......................……..……5, 13, 14

Gilat Satellite Networks, Ltd.,
 No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)......................13

Gilliam v. Addicts Rehab. Ctr. Fund,
 05 Civ. 3452 (RLE), 2008 WL 782596 (S.D.N.Y. Mar. 24, 2008)……………....4

Goldberger v. Integrated Res. Inc.,
 209 F.3d 43 (2d Cir. 2000)...…..………………..………5, 6, 7, 8, 9, 10, 12, 13, 14, 15

Grace v. Ludwig,
 484 F.2d 1262 (2d Cir. 1973)………..…………………………………….…15

Harry Casper, Inc. v. Pines Assocs., L.P.,
 861 N.Y.S.2d 820 (N.Y. App. Div. 2008)………………………………………12

In re Am. Bank Note Holographics, Inc.,
 127 F. Supp. 2d 418 (S.D.N.Y. 2001)………………………………………....6

In re Continental Illinois Sec. Litig.,
 962 F.2d 566 (7th Cir. 1992)………………………………………………...6

In re Elan Sec. Litig.,
        385 F. Supp. 2d 363 (S.D.N.Y. 2005)……………………………………………...10

In re Gilat Satellite Networks, Ltd.,
        No. 02 Civ. 1510, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)……………….13

In re Lloyd's Am. Trust Fund Litig.,
        No. 96 Civ. 1262 (RWS), 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)……….6

In re Merrill Lynch Tyco Research Sec. Litigation,
        249 F.R.D. 124……………………………………………………………………...12

In re Prudential Sec. Inc. Ltd. P'ship Litig.,
        912 F. Supp. 97 (S.D.N.Y. 1996)…………………………………………...…….10

In re Ramp Corp. Sec. Litig.,
        No. 05 Civ. 6521 (DLC), 2008 WL 58938 n.2 (S.D.N.Y. Jan. 3, 2008)…………7

In re Sumitomo Copper Litig.,
        74 F. Supp. 2d 393 (S.D.N.Y. 1999)……………………………………………6, 14

In re Telik, Inc. Securities Litigation,
        576 F.Supp.2d 570 (S.D.N.Y.2008)………………………………………………9

J.I. Case Co. v. Borak,
        377 U.S. 426 (1964)…………………………….…………………………………14

Johnson v. Brennan,
        10 CIV. 4712 (CM), 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)………..…...9

Karpus v. Borelli (In re Interpublic Sec. Litig.),
        No. 03 Civ. 1194 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)…………6

Khait v. Whirlpool Corp.,
        No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010)…………….14

Levy v. Verizon Info. Servs., Inc.,
        498 F. Supp. 2d 586, 600-03 (E.D.N.Y. 2007)…………………………………..11

McDaniel v. County of Schenectady,
        595 F.3d 411 (2d Cir. 2010)………………………………………………………5

Pachter v. Bernard Hodes Group, Inc.,
        10 N.Y.3d 609 (2008)……………………………………………………………..11

<u>Phillips Petroleum Co. v. Shutts,</u>
    472 U.S. 797, (1985)…………...…………………………………………………..14

<u>Prasker v. Asia Five Eight, LLC,</u>
    No. 08 Civ. 5811 (MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)………....14

<u>Ramirez v. Lovin' Oven Catering Suffolk, Inc.,</u>
    No. 11 Civ. 0520 (JLC) 2012 WL 651640 (S.D.N.Y. Feb. 24, 2012)…..........4, 13

<u>Savoie v. Merchs. Bank,</u>
    166 F.3d 456 n.4 (2d Cir. 1999)……………….………………………………..7

<u>Strougo v. Bassini,</u>
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)……………………………………….6

<u>Taft v. Ackermans,</u>
    No. 02 Civ. 7951 (PKL), 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007)………….12

<u>Velez v Majik Cleaning Serv., Inc.,</u>
    No. 03 Civ. 8698 (KNF) 2007 WL 7232783 (S.D.N.Y. June 25, 2007)………..13

<u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,</u>
    396 F.3d 96 (2d Cir. 2005)………………….…………………………….5, 6

## INTRODUCTION

In connection with Plaintiffs' Unopposed Motion for Final Approval of Class Settlement in the above captioned case,[1] the law firms of Thompson Wigdor LLP ("TW") and Zabell & Associates, P.C. ("Z & A"), (together "Class Counsel") respectfully move this Court for an attorneys' fees award of $137,500, which reflects a discounted fee of twenty-five percent (25%) (from a signed thirty-three percent (33%) retainer) of the common settlement fund (the "Fund") and is inclusive of out-of-pocket expenses that Class Counsel incurred in successfully prosecuting the claims in this action.   Class Counsel's request is unopposed by Defendant 20/20 Communications, Inc. (20/20 Communications).   Moreover, no potential class member, all of whom were advised of Class Counsel's attorneys' fees request in the Class Notice and of whom 201 have consented to participate in the settlement, has opposed this request.

To date, Class Counsel have spent nearly 1,100 total attorney and paralegal hours prosecuting this case since its inception.   As the Court is aware, Class Counsel secured an earlier partial class settlement in this action against Defendants 20/20 Companies, Barry Millay, William Rowland, Jr. and Jason Green (together "20/20 Companies") for $1,296,000 (the "20/20 Companies Settlement").   Subsequently, the Court awarded attorneys fees in the amount of one-fourth of the settlement fund, or $324,000, and $11,428.56 in costs, in part after the Court computed Class Counsel's lodestar amount to be $248,485.25.   See Dkt. No. 51.   The Court held that awarding a fee equivalent to 25% of the settlement fund was "reasonable given the nature, complexity of the legal and factual issues, the amount and timing of the partial settlement, and the relation to the lodestar amount."   Id.

---

[1]      For a detailed account of the factual and procedural background of this case, including settlement negotiations and administration, Class Counsel respectfully refer the Court to the Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement

Soon after the Court granted final approval to the 20/20 Companies Settlement, Class Counsel negotiated a settlement with 20/20 Communications (the "Agreement") effectively resolving the entire matter (the "20/20 Communications Settlement" or the "Class Settlement"). The Agreement created a common settlement fund of up to $550,000, inclusive of up to $12,000 in claims administration costs, a set aside for calculation errors, service payments not to exceed $5,666.67 for Class Representatives, and $137,500, or twenty-five percent of the Fund, in Class Counsel's attorneys fees and costs. See Agreement at ¶¶ 19, 35, 49, 50 (attached as Exhibit 1 to Wigdor Aff.). Participating Class Members would receive a payment of $37.23 for each week they worked in a covered position at 20/20 Communications. Id. at ¶ 21. On May 25, 2012, the Court preliminarily approved the Class Settlement. See May 25, 2012 Order Granting Preliminary Approval of Class Settlement. Following the Court's final approval of the 20/20 Companies Settlement, Class Counsel have spent more than **280** total attorney and paralegal time in fully resolving this matter. See Wigdor Aff. at ¶ 23.

Class Counsel's request for twenty-five percent of the Fund, when considered in light of the aggregation of Class Counsel's efforts to bring this action to a complete resolution, is not inconsistent with the amount of work performed, the complexity of the litigation, the risks involved, the quality of representation, the proportion of the fee in relation to the settlement, and the public policy benefits of this claim. Class Counsel's request for twenty-five percent of the Fund is also within the range of what courts have awarded in similar cases, including what this Court awarded earlier to Class Counsel following approval of the 20/20 Companies Settlement. Class Counsel's efforts in resolving Plaintiffs' and the Class Members' claims against Defendant 20/20 Communications to date have been uncompensated, and their entitlement to be paid has been wholly contingent upon achieving a good result. For the reasons set forth below, Class

3

Counsel respectfully submit that the attorneys' fees and expenses reimbursements in the amount of $137,500 is fair and reasonable under the applicable legal standards and the result achieved, and should be awarded.

## ARGUMENT

### I.  CLASS COUNSEL ARE ENTITLED TO A REASONABLE AWARD OF TWENTY FIVE PERCENT OF THE SETTLEMENT FUND

On May 25, 2012, the Court appointed Zabell & Associates, P.C. and Thompson Wigdor LLP as Class Counsel because they met all of the requirements of Rule 23(g) of the Federal Rules of Civil Procedure.  See May 25, 2012 Order Granting Preliminary Approval of Settlement at ¶ 9.  Accordingly, Class Counsel are entitled to reasonable attorneys' fees to compensate them for their substantial work identifying, prosecuting, and settling Plaintiffs' and the Class Members' claims against 20/20 Communications.  The Settlement Agreement, which has been preliminarily approved by the Court, provides that Class Counsel:

> may seek from the Court up to one hundred thirty-seven thousand five hundred dollars ($137,500) as full payment of their fees and costs incurred in connection with the Action.  20/20 will not oppose Class Counsel's motion for the payment of fees and costs.  Payment of the attorneys fees shall be made within thirty (30) days after the Settlement Effective Date, provided the Settlement Effective Date occurs.

Agreement at ¶ 50.  Class Counsel's request for twenty-five percent of the fund plus expenses is reasonable and well within the range approved by courts in similar cases.  See, e.g., Ramirez v. Lovin' Oven Catering Suffolk, Inc., No. 11 Civ. 0520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) ("Given that this case settled quickly relative to the filing of the complaint, Class Counsel's request for 25% of the fund is reasonable and consistent with (if not lower than) the norms of class litigation in this Circuit."); Gilliam v. Addicts Rehab. Ctr. Fund, 05 Civ. 3452 (RLE), 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (fee of one-third of the settlement fund is reasonable and "consistent with the norms of class litigation in this circuit") (citing cases).

In addition, potential class members were advised in the Class Notice that Class Counsel would be seeking an attorneys' fees award of up to one-fourth of the Fund.  See Class Notice at 3 (attached as Exhibit 3 to Wigdor Aff.).  However, not one potential class member has made an objection, a factor held by courts as supporting approval of an attorneys' fees award.  See Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172, 183 (W.D.N.Y. 2011) (absence of objections to an agreed-upon attorney's fee award is "a factor that weighs in favor of approval of the award") (citing cases).

### A. The Percentage Method is the Preferred Method in the Second Circuit for Awarding Attorneys' Fees in Common Fund Cases.

In wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award.  See Frank v. Eastman Kodak Co., 228 F.R.D. 174, 189 (W.D.N.Y. 2005).  Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill the private attorney general role must be adequately compensated for their efforts.  Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338-39 (1980).  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.  Goldberger v. Integrated Res. Inc., 209 F.3d 43, 51 (2d Cir. 2000) (endorsing the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Courts in this Circuit prefer a percentage of the fund method in common fund cases like this one.  McDaniel v. County of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method . . . .").  There are several reasons why.

First, the percentage method "directly aligns the interests of the class and its counsel" because it encourages attorneys to resolve the case efficiently and to create the largest common

fund from which payments to the class can be made. Wal-Mart Stores, 396 F.3d at 121 (quoting In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262 (RWS), 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); see also Goldberger, 209 F.3d at 47-50. The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." In re Sumitomo Copper Litig., 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); Strougo v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients"); In re Am. Bank Note Holographics, Inc., 127 F. Supp. 2d 418, 432 (S.D.N.Y. 2001) (the court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order") (quoting In re Continental Illinois Sec. Litig., 962 F.2d 566, 568 (7th Cir. 1992)).

Second, the percentage of the fund method promotes early resolution. It "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." Wal-Mart Stores, 396 F.3d at 122 (quoting In re Lloyd's Am. Trust Fund Litig., 2002 WL 31663577, at *25) (internal quotation marks omitted). The percentage method discourages plaintiffs' lawyers from running up their billable hours and "decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay." Karpus v. Borelli (In re Interpublic Sec. Litig.), No. 03 Civ. 1194 (DLC), 2004 WL 2397190, at *11 (S.D.N.Y. Oct. 26, 2004).

Here, applying only the lodestar method would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result. Furthermore, Class Counsel's work on the matter is continuing throughout administration of the settlement through the special master appointed by the Court. Therefore, the hours expended to date only partially reflect all

the hours Class Counsel will ultimately devote to the successful and final resolution of this action.

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." Savoie v. Merchs. Bank, 166 F.3d 456, 461 n.4 (2d Cir. 1999) (internal quotation marks omitted).  The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." Goldberger, 209 F.3d at 48-49; see also In re Ramp Corp. Sec. Litig., No. 05 Civ. 6521 (DLC), 2008 WL 58938, at *2 n.2 (S.D.N.Y. Jan. 3, 2008).

## B.  The Goldberger Factors Support an Award of 25% of the Fund.

Reasonableness is the touchstone for determining attorneys' fees. In Goldberger, 209 F.3d at 50 (internal quotation marks omitted), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.  All of the Goldberger factors weigh in favor of granting approval of Class Counsel's fee application.

### 1.   Class Counsel's Time and Labor

Since beginning its investigation and evaluation of claims, Class Counsel expended significant effort to achieve the $550,000 settlement with 20/20 Communications.  Prior to filing the class complaint and immediately following its filing, Class Counsel interviewed approximately 20 potential class members about the work they performed for Defendant 20/20 Communications, its affiliates or subsidiaries, how much work they performed, what instructions

7

their supervisors gave them, and other information relevant to their claims.  From these interviews, Class Counsel obtained and reviewed thousands of pages of supportive documentation and performed a substantial amount of legal research.  In part because of these endeavors, Class Counsel was able to timely amend the original Complaint in this action to join 20/20 Communications as a defendant, preserving Plaintiffs' and the class members' claims against 20/20 Communications, and ensuring that 20/20 Communications would be held liable if found culpable.

Moreover, throughout the course of this litigation, as well as the corresponding state retaliation action, Class Counsel have been engaged in extensive motion and appellate practice, and obtained supportive declarations from multiple individuals.  Furthermore, Class Counsel have spent a significant amount of time performing numerous damage calculations for various class members.  On May 1, 2012, Class Counsel filed a Motion for Preliminary Approval of the 20/20 Communications Settlement.  On May 25, 2012, the Court granted Plaintiff's Motion for Preliminary Approval of the Settlement.  Thereafter, Class Counsel have been in regular communications with the Claims Administrator and class members.

Further, were the Court to apply a loadstar cross-check to Class Counsel's award request, the Court would find Class Counsel's request reasonable.  "Where the [lodestar method] is used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the District Court.  Instead the reasonableness of the claimed lodestar can be tested by the Court's familiarity with the case."  Golberger, 209 F.3d at 50.

Since Class Counsel settled Plaintiffs' claim against the 20/20 Companies Defendants in March 2011, Class Counsel expended more than **280** hours of attorney, paralegal and administrative support staff time performing the tasks noted above.  See Wigdor Aff. at ¶¶ 23,

24, 25, 27; Z & A Time Records and TW Time Records (attached as exhibits 8 and 9 respectively to Wigdor Aff.**).**  These hours are reasonable for a case like this one, and were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.  Class Counsel used a small team of attorneys and staff at any one time in order to minimize duplication of efforts and maximize billing judgment.

Further, when the total hours expended in bringing this matter to a resolution are multiplied by Class Counsel's hourly billable rates, the resulting lodestar figure is **$120,703**.  See Wigdor Aff. at ¶ 31.  If the Court were to apply a multiplier of **1.139**, the Court would arrive approximately at Class Counsel's current request of $137,500.  This multiplier is reasonable, and compensates Class Counsel for the risk they assumed, the quality of their work and the result achieved for the class.  See In re Telik, Inc. Securities Litigation, 576 F.Supp.2d 570, 590 (S.D.N.Y.2008) ("Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk they assumed, the quality of their work and the result achieved for the class."… "In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts"); Johnson v. Brennan, 10 CIV. 4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar) (citing cases); Davis, 827 F.Supp.2d at 185 (multiplier of 5.3 in FLSA and NYLL case).  Indeed, applying only the lodestar method would penalize Class Counsel for reaching early settlement and achieving a quick and manifestly favorable result.  Accordingly, the first Goldberger factor strongly supports Class Counsel's attorneys' fee request.

2.  Magnitude and Complexity of the Litigation

This class action settlement will bring final resolution to the claims of more than 700 individuals.  The size of the class and the complexity of the factual and legal questions involved further support the reasonableness of the fee award.  Under the second Goldberger factor, the size and difficulty of the issues in a case are significant factors to be considered in making a fee award.  Goldberger, 209 F.3d at 50; In re Prudential Sec. Inc. Ltd. P'ship Litig., 912 F. Supp. 97, 100 (S.D.N.Y. 1996).  At all times during settlement negotiations, negotiations were conducted on an arm's-length basis.  Counsel reviewed a substantial amount of data to value the class members' claims as well as in assessing Defendant 20/20 Communications' defenses.  The second Goldberger factor strongly supports Class Counsel's attorneys' fee request.

3.  Risk of Litigation

The risk of litigation is "perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." In re Elan Sec. Litig., 385 F. Supp. 2d 363, 374 (S.D.N.Y. 2005).  Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  Detroit v. Grinnell Corp., 495 F.2d 448, 470 (2d Cir. 1974). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." Id. at 471.

Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk. Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming.  Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources.  Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful

outcome and no fee of any kind.  Class Counsel stood to gain nothing in the event that the case was unsuccessful.

Moreover, the circumstances of this case presented numerous hurdles to a successful recovery of unpaid commissions and improper deductions because of the fact-intensive nature of proving liability under the applicable wage laws, and in light of the defenses available to Defendant 20/20 Communications, which would pose substantial risk as to both liability and damages.

As discussed in prior applications to the Court, to prove that Defendant 20/20 Communications failed to pay "earned" commissions, for example, Plaintiffs would have to show not only that the sales in question were properly made and documented, but also that they were improperly rejected or reversed after the commissions had already been earned.  To do so on behalf of the entire proposed class, moreover, Plaintiffs would have to demonstrate the existence of an unlawful policy or practice to withhold earned wages or some systemic flaw in Defendant 20/20 Communications' administrative processes sufficient to render the rejections or reversals during the Class Period so legally suspect as to warrant the imposition of classwide liability.[2]

Furthermore, 20/20 Communications believes that it has a strong likelihood of success on their anticipated motion to dismiss, which requests dismissal of Plaintiffs' claims on the grounds of a forum selection clause that expressly requires Plaintiffs to litigate their claims in Texas.

---

[2]    Similarly, to prove that Defendant 20/20 Communications took unlawful deductions from their paychecks, Plaintiffs will have to show that the allegedly unlawful deductions were made after the wages in questions had been "earned."  See Pachter v. Bernard Hodes Group, Inc., 10 N.Y.3d 609, 618-19 (2008) (holding that the NYLL permits employers to make adjustments to the calculation of commissions for business expenses); Levy v. Verizon Info. Servs., Inc., 498 F. Supp. 2d 586, 600-03 (E.D.N.Y. 2007) (same).  As Plaintiffs' ability to meet this evidentiary burden is far from certain, Plaintiffs would face real litigation risks if their claims against Defendant 20/20 Communications were to proceed.

Such clauses enjoy a presumption of validity under New York law and may on the strength of that presumption be enforced by this Court. See Boss v. Am. Express Fin. Advisors, Inc., 791 N.Y.S.2d 12, 14 (N.Y. App. Div. 2005) ("It is the well settled 'policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation.'") (citation omitted); Harry Casper, Inc. v. Pines Assocs., L.P., 861 N.Y.S.2d 820, 820 (N.Y. App. Div. 2008) (noting that forum selection provisions are considered to be "prima facie valid") (citing Brooke Group v. JCH Syndicate 488, 640 N.Y.S.2d 479, 481 (1996)). Were the Court to entertain this anticipated motion to dismiss, Plaintiffs' would have faced a real danger of having their claims transferred to a Texas court unfamiliar with the New York Labor Law provisions, further diminishing their chances of receiving a meaningful recovery.

Despite these risks, Class Counsel secured a substantial settlement. See, e.g., In re Merrill Lynch Tyco Research Sec. Litigation, 249 F.R.D. 124, 137-38 (awarding 22% recovery in case where there was a very low risk of non-recovery). Accordingly, the third Goldberger factor strongly supports Class Counsel's attorneys' fee request.

### 4. Quality of Representation

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." Taft v. Ackermans, No. 02 Civ. 7951 (PKL), 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007). In this case, the results speak to the quality of the representation.

The $550,000 settlement amount represents a good value given the attendant risks of litigation, even though recovery could be greater if Plaintiffs succeeded on all claims at trial and survived an appeal. The settlement amounts will be available to Class Members without the uncertainty and delay of trial.

12

Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation. The diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests. Therefore, the fourth Goldberger factor strongly supports Class Counsel's attorneys' fee request. See, e.g., Ramirez, 2012 WL 651640, at *4 (granting plaintiffs' motion for attorneys fees of 25% of the total settlement amount after class counsel "committed substantial resources to prosecuting this case," and achieved an "excellent result for the Class in a highly efficient manner at an early stage of litigation."); Velez v Majik Cleaning Serv., Inc., No. 03 Civ. 8698 (KNF), 2007 WL 7232783, at *25 (S.D.N.Y. June 25, 2007) (recommending that "[l]ead Counsel's experience representing plaintiffs in class action" supported a 31% contingency fee award); Frank, 228 F.R.D. at 189 (citing plaintiffs' counsel's experience as one factor supporting an attorneys' fee award of 40% of the fund).

### 5.  Fee in Relation to the Settlement

Courts also consider the size of the settlement to ensure that the percentage award does not constitute a "windfall." See, e.g., In re Gilat Satellite Networks, Ltd., No. 02 Civ. 1510, 2007 WL 2743675, at *16 (E.D.N.Y. Sept. 18, 2007). Courts in this Circuit have routinely granted requests of approximately one-quarter to one-third of the fund in cases with settlement funds substantially larger than this one. See, e.g., Ramirez, 2012 WL 651640, at *4 (granting 25% of the $4,750,000 total settlement amount in FLSA and NYLL wage case as attorneys' fees); Khait v. Whirlpool Corp., No. 06-6381 (ALC), 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) (awarding 33% of $9.25 million settlement fund in FLSA and multi-state wage and hour case); Febus v. Guardian First Funding Group, LLC, 10 CIV 2590 (SHS), 2012 WL 2368472, at

*2 (S.D.N.Y. June 22, 2012) (awarding one-third of $850,000 common fund in hybrid wage and hour action).  Thus, the fifth Goldberger factor strongly supports Class Counsel's attorneys' fee request.

### 6. Public Policy Considerations

Public policy considerations weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation."  In re Sumitomo Copper Litig., 74 F. Supp. 2d at 399.

The NYLL is a remedial statute designed to protect the wages of workers.  Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes.  See, e.g., Prasker v. Asia Five Eight, LLC, No. 08 Civ. 5811 (MGC), 2010 WL 476009, at *6 (S.D.N.Y. Jan. 6, 2010) ("Attorneys who fill the private attorney general role must be adequately compensated for their efforts.  If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk.").

Courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorneys general" to seek redress for violations and discourage future misconduct of a similar nature.  See Roper, 445 U.S. at 338-39.  Class actions are also an invaluable safeguard of public rights.  See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985); J.I. Case Co. v. Borak, 377 U.S. 426, 433-34 (1964).  Particularly where, as here, the settlement fund is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard."  Frank, 228 F.R.D. at 189.  If courts denied sufficient attorneys' fees, "no attorneys . . . would likely be willing to take on . . . small-scale class actions."  Id.  Courts,

therefore, look with favor upon awarding attorney fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." Grace v. Ludwig, 484 F.2d 1262, 1267 (2d Cir. 1973).

   In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The violations complained of are of long-standing duration. Nevertheless, apparently no state or federal governmental action has ever been brought against Defendant 20/20 Communications to correct these deficiencies.  The award of the requested fees will encourage the prosecution of similar claims and further a significant public interest goal. Therefore, the seventh Goldberger factor strongly supports Class Counsel's attorneys' fee request.

   For all of these reasons, the Court should grant Class Counsel's request for attorneys' fees because all of the Goldberger factors are met.

## CONCLUSION

For the reasons set forth above, Class Counsel respectfully request that the Court grant

Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Expenses for Class

Settlement and enter an Order awarding attorneys' fees and costs in the amount of $137,500.

Dated: September 7, 2012
      New York, New York

                                    Respectfully submitted,

                                      **THOMPSON WIGDOR LLP**

                                      Douglas H. Wigdor
                                        85 Fifth Avenue
                                        New York, NY  10003
                                        Tel:  (212) 257-6800
                                        Fax: (212) 257-6845

                                        Saul D. Zabell
                                        Zabell & Associates, P.C.
                                        One Corporate Drive
                                        Suite 103
                                        Bohemia, New York 11716
                                        Tel:  (631) 589-7242
                                        Fax: (631) 563-7475

                                        *Counsel for Plaintiffs and the Class*